Town & a. *v.* Griffith and Trustee.

If one deliver goods to an auctioneer, with directions to sell and pay the proceeds to another, whose agent he assumes to be, this is not a delivery to that other, unless he have notice and assent to it; previous to which notice and assent the goods or their proceeds are liable to be attached as the property of the bailor, and the bailee is his trustee.

Nor is such a transaction equivalent to a delivery to such third person, having an unrecorded mortgage of the goods—such notice and assent not appearing.

If a mortgage be delivered to the town-clerk, with directions not to record it until further notice, and be not in fact recorded, it cannot be deemed as recorded, until such notice be given, although the clerk, on receiving it, minute upon the instrument the day and hour of its reception.

Foreign Attachment.  It appeared that the defendant had been a trader in Greenland, and on the 14th day of August, 1842, delivered to the town-clerk of that town a paper, purporting to be a mortgage of the goods in his store to Edward Griffith, his father, to secure certain demands and indemnities described in the instrument. Upon some conversation ensuing upon the fee for recording such a document, the defendant said, "Then you may let it lie as it is, and when I want you to record it I will let you know," or words to that effect; meaning by the word "record," the act of transcribing into the book kept for that purpose.  The town-clerk indorsed upon the paper at the time, but whether immediately before or after this direction of the defendant, did not appear, "Rec'd Aug. 14, 1843: P. M. ¼ before 3.  James P. Parker, town-clerk."

Afterwards, in the fall of the same year, it was ascertained that the mortgage was in the possession of the defendant; but it was soon after returned to the town-clerk, and in April, 1844, the defendant called upon him, requested him to record the mortgage, and paid him for it. It was accordingly recorded, together with the before-mentioned indorsement upon it.

In October or November, 1843, the defendant Griffith brought to the store of Towle, the trustee, who was an auctioneer and commission merchant in Portsmouth, some goods, being parcel of those embraced and described in the supposed mortgage, and informed Towle that they were mortgaged to his father, Edward Griffith, for purposes which he explained, and requested him to sell the goods for Edward Griffith. A portion of them was sold and entered accordingly to his credit, to the amount of $115 cash, and in goods returnable at $165.93. The defendant, on delivering the goods, informed the trustee that his father requested and authorized the sale to be made, but no writing from him was exhibited, nor any mortgage; nor did he ever communicate with the trustee on the subject before the service of the writ, unless through the agency of the defendant. The money was paid over to the defendant, who gave a receipt for it in his father's name, and as his agent, after the service of the writ, upon the written requisition or order of Edward Griffith.

The writ in this action was dated on the nineteenth day of October, 1843, and was served upon the trustee on the second day of November following.

*Hackett*, for the trustee. The mortgage is dated and was executed August 14, 1843, and was on the same day delivered to the mortgagor, to be by him delivered to the town-clerk, to be by him recorded. The town-clerk might rightfully have declined to record the mortgage till his fees were paid. But this is a personal privilege, and he waived it when he received the mortgage, and entered upon it a minute of the time of its reception. His official duty then became absolute, and the mortgage became in law recorded. If he afterwards kept it carelessly, or neglected unreasonably to extend it upon the record, to the prejudice of other parties, they may have their remedy against him.

Town *v.* Griffith.

The mortgagor, by being the bailee of the mortgagee for the purpose of delivering it to the town-clerk for record, did not obtain any power to make stipulations modifying the duties of the town-clerk, or affecting the rights of others, or impairing the security of the mortgage. The town-clerk, on the 14th of August, 1843, either received the mortgage for the purpose of record, or he declined it. If he received it, it was instantly recorded in law, and the mortgagee acquired rights thereby which the subsequent negligence of the town-clerk cannot divest or affect.

This was a common occurrence. The mortgagor undertook to deliver the mortgage to the recording officer. His authority extended no further. The officer, waiving his right to demand his fees in advance, could not afterwards, with or without the assent of the mortgagor, put at hazard the rights of the mortgagee.

Besides, before the suit was commenced, the mortgagee had actually taken possession of the property for condition broken, and conveyed it from the store of the defendant, in Greenland, to that of the trustee, in Portsmouth, for the purpose of being sold. The sale had been advertised by the latter in pursuance of the statute, a considerable part sold, and the money actually paid over to the mortgagee. The possession of the trustee was, under the circumstances of the case, the possession of the mortgagee, and the trustee must be discharged, even if the court should hold that the mortgage was not recorded.

*Hatch*, for the plaintiff.

GILCHRIST, J. When the writ was served upon the trustee in this case, he had in his hands a sum of money and a quantity of goods, which were the proceeds of sales of goods which the defendant delivered to him, in October or November, 1843. The delivery of the goods was ac-

Town *v.* Griffith.

companied with directions to sell the same, and to pass the avails to the credit of Edward Griffith, who was represented by the defendant to have been his surety, and entitled to an indemnity. He was, moreover, represented as being interested in the goods as a mortgagee, and, in fact, the source of authority under which the trustee was to proceed in making the sales. Some progress had been made under these instructions, and some money had been paid over by the trustee to the defendant, assuming to receive it as the agent of his father; but no recognition whatever had been made by the latter of any of these acts of the defendant, or of the proceedings of the trustee, up to the time of the service of the writ. The case wholly fails to furnish any evidence that the trustee was appointed or acknowledged by Edward Griffith as his agent in receiving, keeping or selling the goods, until after the service of the writ; or that, until after that event, any knowledge ever came to Edward Griffith that goods had been deposited with the trustee by the defendant for any purpose whatever.

It therefore cannot be found, upon any evidence thus far adverted to in the case, that the goods were delivered to Edward Griffith, or his agent, either under the mortgage or in pledge; or that the trustee was in any way chargeable at the suit of Edward Griffith, or as his bailee, by virtue of having received the goods, up to the time of the service of the writ, which arrested the progress of the business, and held the parties to the relations in which they then stood. Up to that point of time the only party with whom the trustee had dealt, so far as there is evidence, was the defendant; and Edward Griffith first appears as a party in person, by the written order or request which he afterwards sends for the payment of the money to the defendant as his agent. He then, for the first time, appears to recognize the trustee as his servant, and to accept the benefit of the bailment of the goods that had

been made for his indemnity. In such a state of things, therefore, it is clear that the trustee should be chargeable as having the goods or money of this defendant at the time of the service of the writ.

But a claim is set up under a mortgage executed by the defendant, and recorded by the town-clerk of Greenland on the 14th day of August, 1843.

To this claim the most obvious objection is, that the case furnishes no evidence whatever that the mortgage deed was ever executed and delivered to the mortgagee. These facts are not in terms apparent, nor is there evidence from which they are necessarily to be inferred.

But, as it is possible that such evidence may exist, it becomes proper to notice another objection to the validity of the mortgage, which proceeds upon the admission of those necessary facts. The statute providing for the mortgage of chattels requires that " possession must be delivered to and retained by the mortgagee, or the mortgage must be recorded in the office of the clerk of the town in which the mortgagor resides," &c. Rev. Stat., chap. 132, sec. 2. There was, as we have seen, no delivery of property to the mortgagee, and it remains to examine the evidence adduced to prove a record of the mortgage.

As to this point, all that appears is, that it was not, in point of fact, recorded till in April, 1844. On the 14th day of August, 1843, it was delivered by the mortgagor, whom, without any evidence of the fact, we will presume to have been authorized by the mortgagee to act for him. But he gave no directions that the instrument should be recorded; on the contrary, he directed the clerk not to record it till further orders, and in April afterwards he gave those orders, and it was accordingly recorded.

It is impossible to distinguish this case in principle from that of *Low* v. *Pettengill*, 12 N. H. Rep. 337, which it closely resembles in its leading facts. In that case the

court held that the mere leaving the mortgage with the clerk, to record it at some future period, was not a record or equivalent to a record. To hold it to be such would be to defeat the purpose of the law on the subject, which was to give publicity to the transaction, and notice to all such as desired information sufficiently to seek for it at a place provided by law for furnishing it.

The entry made by the clerk upon the back of the instrument, indicating the day and hour of its reception by him, is of no consequence, since it does not appear that it was ever delivered to him for record, except with the qualification mentioned. If it is conclusive evidence of the fact it purports to certify, it certainly cannot be deemed conclusive that the instrument was delivered for the purpose of being recorded in the ordinary manner, when the proof is clear, as it is in this case, that it was not so delivered; but that it was delivered with directions that it should not be recorded till further notice. *Hastings* v. *Turnpike*, 9 Pick. 80.

We are, therefore, of the opinion — without inquiring as to the precise effect of leaving a mortgage for record, with directions to that purport, when there is never in fact any record made, the circumstances of the case rendering such an inquiry unnecessary — that the trustee must, upon the evidence, be charged.

*Trustee charged.*